IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 18–cv–02125–KMT


CANDACE AGUILERA,

      Plaintiff,

v.

CITY OF COLORADO SPRINGS, a municipality,
DANIELLE MCCLARIN, in her official and individual capacity,
ANGIE NEIVES, in her official and individual capacity,
ROGER VARGASON, in his official and individual capacity,
BRETT LACEY, in his official and individual capacity,
ROBERT MITCHELL, in his official and individual capacity,

      Defendants.

---

## ORDER

---

    This matter is before the court on "Defendant Mitchell's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 17) Pursuant to Fed. R. Civ. P. 12(b)(1) and (6)." (Doc. No. 22 [Mitchell Mot.], filed September 28, 2018.) Plaintiff filed her response on March 23, 2019 (Doc. No. 39 [Resp. Mitchell Mot.]), and Defendant Mitchell filed his reply on April 3, 2019 (Doc. No. 41 [Mitchell Reply]).

    Also before the court is the "City Defendants' Motion to Dismiss Amended Complaint."[1] (Doc. No. 23 [City Mot., filed October 2, 2018.) Plaintiff filed her response on March 23, 2018

---

[1] The City Defendants include the City of Colorado Springs, Danielle McCalarin, Angie Nieves, Roger Vargason, and Brett Lacey. (*See* City Mot. at 1.)

(Doc. No. 38 [Resp. City Mot.]), and the City Defendants filed their reply on April 8, 2019 (Doc. No. 42 [City Reply]).

Also before the court is Plaintiff's "Motion for Leave to File a Second Amended Complaint" (Doc. No. 26 [Mot. Amend], filed October 16, 2018). Defendants filed a joint response on October 24, 2018 (Doc. No. 30 [Resp. Mot. Amend]), and Plaintiff filed her reply on November 7, 2018 (Doc. No. 34 [Reply Mot. Amend]).

## STATEMENT OF THE CASE

Plaintiff, proceeding *pro se*, filed her Amended Complaint on September 24, 2018. (Doc. No. 17 [Am. Compl.].) Plaintiff alleges Defendant City of Colorado Springs "has utilized its resources of the police and fire dept. in a pattern that illegally threatens and persecuted [Plaintiff's] absolute natural right to [her] sole beliefs and practices, GreenFaithMinistry, [her] spirituality/religion under the First Amend. Free Exercise Clause." (*Id*. at 3.)

Plaintiff states she is the "Property manager, Volunteer, High Priestess (second minster [sic] in command), member, etc. [of GreenFaithMinistry] who leases two rooms [to GreenFaithMinistry]." (*Id.* at 8, ¶ 18.) Plaintiff alleges on July 10, 2017, Plaintiff alleges that two City Fire Department Marshals (Defendants McClarin and Nieves) and a City Police Officer (Defendant Vargason) attempted to conduct an occupancy check of the building in which GreenFaithMinistry is located. (*Id.*, ¶¶ 11–13, 18–19.) Plaintiff states she refused to let the defendants in the building and, instead, told them they would have to contact Reverend Baker. (*Id.*, ¶ 19.) Plaintiff alleged Defendant McClarin told her, "If you do not let us in, nobody will be allowed in." (*Id.* at 11, ¶ 24.)

While Defendants McClarin, Nieves, and Vargason contacted Reverend Baker by telephone from the front porch of the building, other GreenFaithMinistry members approached the building. (*Id.*, ¶¶ 21, 27, 34, 35.) Defendant Nieves allegedly questioned one of the individuals, asking "[i]f marijuana is being consumed inside the building." (*Id.*, ¶ 34.) The various members who approached the building left the premises. (*Id.*, ¶¶ 27, 34, 35.)

Plaintiff alleges Defendant Vargason pulled forcefully on the doors to GreenFaithMinistry in an "attempt to gain illegal entry." (*Id.* at 16–17, ¶ 28.) Plaintiff came to the door, and the following exchange allegedly took place between her and Defendant Vargason:

> "Open this door. If you do not open this door, you will be in trouble" Defend[ant] Roger Vargason then uses all his weight and leans noticeably back in attempt to pull the secured entrance door. Plaintiff [ ] responds "this is private property do you have a warrant? This angers Defendant Officer Roger Vargason who reply's [sic] "Oh now I am talking to Rob Corry" (Marijuana lawyer out of Denver)[.] Defendant Officer Roger Vargason continues to attempt to unlawfully, lawlessly, arbitrary, forcefully open secured doors in violation of Art. 6, Clause 2 Supremacy Clause, Constitutions, Fourth Amend.

(*Id.*, ¶¶ 28, 30.) Plaintiff also alleged Defendant Vargason threatened Plaintiff and made "the false, unjustified accusation and persecuted statement 'we know you have an illegal grow in there.' " (*Id.*, ¶ 28.) Plaintiff alleges that, after questioning another member of GreenFaithMinistry and taking pictures of the some of the members' license plates, Defendants Vargason, McClarin and Nieves left the premises after approximately 45 minutes, apparently without gaining access to the property. (*Id.* at 21–23, ¶¶ 33–36.)

Plaintiff alleges the defendants' actions deprived her, GreenFaithMinistry, and its members of their right to freely exercise their religion. (*Id.*) Plaintiff alleges she and four other church members/volunteers were required to vacate their place of worship, which caused

Plaintiff to believe she, GreenFaithMinistry, and the other members were "persecuted via Guilt by Association." (*Id.* at 11–12, ¶ 24.)

Plaintiff asserts claims for the defendants' violations of her "Absolute Natural Rights, Art. 6, Clause 2 Supremacy Clause, Constitutions [sic], First Amend. Violations of the Establishment Clause," (*id.* at 37); the "Free Exercise Clause-Business, Beliefs, Practice, Association, Viewpoint, Idea, Expression, Activities, Conscience, ETC." (*id.* at 45), the "Fourth Amend. Clauses and 42 U.S. Code § 1985 – Conspiracy to Interfere with civil rights. (3) Attempts to enter without a warrant violation of the Fourth Amendment. Attempted Warrantless Search" (*id.* at 52), and

> U.S. of A. Constitution Art. 1 Section 9 Clause 3 No Bill of Attainder or ex post facto Law shall be passed, Section 10 Clause 1 Shall not pass any Bill of Attainder, ex post facto Law, or Law impairing The Obligation of Contracts, or grant any Title of Nobility., Amend. 5 Due Process, Amend. 9, Amend. 10 All Reserved Powers of the people and Also Entangled with the Colorado Constitution Article II Section 1: Vestment of Political Power, Section 3: Inalienable Rights, Section 11: Ex Post Facto Laws nor immunities, Section 25: Due Process of Law, Section 28: Rights Reserved Not Disparaged

(*id.* at 61).

## STANDARDS OF REVIEW

### A.  Pro Se *Plaintiff*

Plaintiff is proceeding pro se.  The court, therefore, "review[s] h[er] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  *Pro se* plaintiffs must "follow the same rules of procedure that govern other litigants" and "must still allege the

necessary underlying facts to support a claim under a particular legal theory." *Thundathil v. Sessions*, 709 F. App'x 880, 884 (10th Cir. 2017) (citations and internal quotation mark omitted). "[A] *pro se* plaintiff requires no special legal training to recount the facts surrounding [her] alleged injury, and [s]he must provide such facts if the court is to determine whether [s]he makes out a claim on which relief can be granted." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Id.*

Courts "cannot take on the responsibility of serving as the litigant's attorney in constructing arguments" or the "role of advocate" for a *pro se* plaintiff. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir.1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle her to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### B.  Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the

court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *See Basso*, 495 F.2d at 909. The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*.

### C. *Failure to State a Claim upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

In evaluating a Rule 12(b)(6) motion to dismiss, the court may consider documents incorporated by reference, documents referred to in the complaint that are central to the claims, and matters of which a court may take judicial notice. *Tellabs, Inc*, 551 U.S. at 322; *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Publicly filed court records, including court transcripts, are subject to judicial notice. *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979); *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007); *Trusdale v. Bell*, 85 F. App'x 691, 693 (10th Cir. 2003).

### D. Amend Complaint

Pursuant to Federal Rule of Civil Procedure 15(a), the court is to freely allow amendment of the pleadings "when justice so requires." Fed. R. Civ. P. 15(a). The grant or denial of an opportunity to amend is within the discretion of the court, but "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Refusing leave to amend is generally only justified upon a showing

of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

## ANALYSIS

### A. Standing

The City Defendants move to dismiss Plaintiff's claims for lack of standing. (City Mot. at 4–5.) Specifically, the City Defendants argue that Plaintiff's claims are based on the defendants' alleged violations of rights other than Plaintiff's. (*Id.*)

Standing is a threshold requirement, and without it, the Court lacks jurisdiction. *Summers v. Earth Island Inst.*, 555 U.S. 488, 492–93 (2009). A federal court's jurisdiction . . . can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (internal citations and quotation marks omitted). Even when the plaintiff has alleged injury sufficient to meet Article III's 'case or controversy' requirement, "the plaintiff generally must assert [her] own legal rights and interests, and cannot rest [her] claim to relief on the legal rights or interests of third parties." *Id.*

Plaintiff asserts claims against the defendants based on their purported violations of others' rights—namely, GreenFaithMinistry and its members. Plaintiff complains that Defendants McCalarin, Nieves, and Vargason deterred others from entering the building. (Am. Compl., ¶¶ 27, 34, 35.) She alleges that Defendant Vargason attempted a warrantless entry of the GreenFaithMinistry building. (*id.*, ¶ 28.) She avers that Defendant Vargason left Reverend Baker a voicemail message falsely accusing GreenFaithMinistry of being a retail marijuana

establishment.  (*Id.*, ¶ 32.)  She contends that the City of Colorado Springs is entangled financially with many Christian organizations and targeted GreenFaithMinistry.  (*Id.*, ¶ 4.) Plaintiff fails to allege how this conduct, directed to other individuals and to the GreenFaithMinistry entity, harmed her.

In her response, Plaintiff does not dispute that she is suing to vindicate the rights of others; rather, she argues, citing *Truax v. Raich*, 239 U.S. 33 (1915), *Pierce v. Society of Sisters of the Holy Names of Jesus and Mary*, 268 U.S. 510 (1925), and *Barrows v. Jackson*, 346 U.S. 249 (1953), that "you can sue for others['] rights.")  (Resp. City Mot. at 2.)  However, in *Truax*, the non-citizen plaintiff did not assert claims on behalf of others but rather sued on his own behalf to challenge the constitutionality of a law that required employers to maintain a workforce of at least eighty percent qualified electors or native-born citizens.  239 U.S. at 39.  In *Pierce*, two private-school-plaintiffs asserted claims on their own behalf to enjoin enforcement of a law that required parents and guardians to send their children to public schools.  268 U.S. at 531–34.

Finally, in *Barrows*, the Court held that a woman who was sued for selling her real property to an African American, in violation of a restrictive covenant applicable to her property, could defend the action, which sought $11,600 in damages, by arguing that the covenant violated the constitutional rights of others.  346 U.S. at 254–55.  The court noted that "a person cannot challenge the constitutionality of a statute unless he shows that he himself is injured by its operation" but that in this case "a judgment against [the plaintiff] would constitute a direct, pocketbook injury to her." *Id.* at 255–56.

In this case, Plaintiff has not alleged that she, personally, was injured by the defendants' alleged conduct directed to GreenFaithMinistry or its members.  Plaintiff does not have standing

to vindicate the rights of others in her own name. *Warth*, 422 U.S. at 499. Accordingly, to the extent Plaintiff asserts claims on behalf of others, including GreenFaithMinistry and its members, the claims are dismissed without prejudice.

Upon a thorough review of Plaintiff's 70-page Amended Complaint, the only allegations concerning actions taken by the defendants against Plaintiff directly are that Defendant Vargason ordered Plaintiff "to 'Praise the lord' " (Am. Compl., ¶ 5); that Defendant McClarin threatened Plaintiff that he would not allow anyone else into the building unless she let the defendants in to conduct the occupancy search (*id*, ¶ 19); and that Defendant Vargason took a picture of Plaintiff's license plate and vehicle (*id.*, ¶ 33). The court addresses these allegations *infra*.

### B. Establishment Clause

The Tenth Circuit follows the three-part test from *Lemon v. Kurtzman*, 403 U.S. 602, 91 (1971), to determine whether a government defendant has violated the Establishment Clause. The Tenth Circuit has explained that

> government action does not violate the Clause if (1) it has a secular purpose; (2) its principal or primary effect is one that neither advances nor inhibits religion; and (3) it does not foster an excessive government entanglement with religion. We interpret the first and second prongs of the *Lemon* test in light of Justice O'Connor's endorsement test. That is, we ask whether government's actual purpose is to endorse or disapprove of religion, and whether, irrespective of government's actual purpose, the practice under review in fact conveys a message of endorsement or disapproval. We evaluate the government's actions from the perspective of a reasonable observer who is aware of the history, purpose, and context of the act in question.

*Medina v. Catholic Health Initiatives*, 877 F.3d 1213, 1230 (10th Cir. 2017) (quoting *Fields v. City of Tulsa*, 753 F.3d 1000, 1010 (10th Cir. 2014)). A governmental action violates the Establishment Clause if it fails to satisfy any of three prongs of the *Lemon* test. *See Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1259 (10th Cir. 2005) ("Thus, to succeed,

Plaintiffs must allege facts which suggest a violation of any part of the [*Lemon*] analysis.”); *Bauchman ex rel. Bauchman v. W. High Sch.*, 132 F.3d 542, 551 (10th Cir. 1997) (noting that governmental action does not run afoul of the Establishment Clause “so long as” it satisfies all three prongs of the *Lemon* test).

### 1. Secular Purpose

“The purpose prong of the *Lemon* test asks whether government’s actual purpose is to endorse or disapprove of religion.” *Kreisner v. City of San Diego*, 1 F.3d 775, 782 (9th Cir. 1993) (quoting *Lynch v. Donnelly*, 465 U.S. 668, 690 (1984) (O’Connor, J., concurring)). “Establishment Clause questions are heavily dependent on the specific context and content of the display.” *O’Connor v. Washburn Univ.*, 416 F.3d 1216, 1222 (10th Cir. 2005) (citing *Van Orden v. Perry*, 545 U.S. 677 (2005) (Breyer, J., concurring in the judgment). The inquiry is “fact-intensive.” *Van Orden*, 545 U.S. at 700 (Breyer, J., concurring in the judgment). “In deciding whether the government’s purpose was improper, a court must view the conduct through the eyes of an ‘objective observer,’ one who takes account of the traditional external signs that show up in the text, legislative history, and implementation of the statute, or comparable official act.” Medina, 877 F.3d at 1230 (citing *Weinbaum v. City of Las Cruces*, 541 F.3d 1017, 1030 (10th Cir. 2008) (quotations omitted)). The Tenth Circuit “will not lightly attribute unconstitutional motives to the government, particularly where [it] can discern a plausible secular purpose.” 877 F.3d at 1230.

Defendants argue, and the court agrees, that an objective observer would not view Defendant Vargason’s alleged statement to Plaintiff, “Praise the lord,” to be motivated by an intent to endorse religion. According to Plaintiff’s own allegations, Defendant Vargason was on

the premises to conduct an occupancy check of the building because he suspected GreenFaithMinistry of operating an illegal marijuana grow and retail store. (Am. Compl., ¶¶ 19, 28.)  Under the facts alleged by Plaintiff, and considering the "history, purpose, and context of" the events in question, *Medina*, 877 F.3d at 1230, the court find it implausible that a reasonable observer would conclude that Defendant Vargason made the statement with the purpose of endorsing religion.  *Iqbal*, 556 U.S. at 678.  Moreover, Plaintiff has alleged no facts to support her conclusions that Defendant McClarin's alleged threats to prevent anyone from entering the building or Defendant Vargason's taking pictures of Plaintiff license plate and vehicle were motivated by an intent to endorse or disapprove of any religion.  *Medina*, 877 F.3d at 1230.  Accordingly, these "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall*, 935 F.2d at 1110.

### 2. Primary Effect

Under the second prong of the *Lemon* test, the court considers whether the government action has the principal or primary effect of advancing or inhibiting religion.  *Lemon*, 403 U.S. at 612.  Plaintiff contends that Defendant Vargason threatened her while making "the false, unjustified accusation and persecuted statement 'we know you have an illegal grow in there' " and " 'what you're doing is illegal.' "  (Am. Compl., ¶ 28.)  Plaintiff then infers that "the real reason" the defendants were at GreenFaithMinistry was to violate the Supremacy Clause.  (*Id.*)  However, again, given the "history, purpose, and context of" the events, *Medina*, 877 F.3d at 1230, the court finds a it is implausible that an objective observer would conclude that Defendant Vargason's statement, Defendant McClarin's alleged threat, or Defendant Vargason's picture-taking conveyed a message that any religion or particular religious belief is favored or preferred.

### 3. *Excessive Entanglement*

" '[T]o assess entanglement, [courts] have looked to the character and purposes of the institutions that are benefited, the nature of the aid that the State provides, and the resulting relationship between the government and religious authority.' " *Rocky Mountain Christian Church v. Bd. of Cnty. Comm'rs of Boulder Cnty.*, 612 F. Supp. 2d 1163, 1181 (D. Colo. 2009) (quoting *Agostini v. Felton*, 521 U.S. 203, 232–233 (1997). Excessive entanglement consists of "interfering in the internal organization of a religious institution." *Medina*, 877 F.3d at 1234. It is conduct that infringes on religious organizations' "independence from secular control or manipulation—[their] power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine.' " *Id.* (citation omitted). "Not all entanglements, of course, have the effect of advancing or inhibiting religion." *Agostini*, 521 U.S. at 233. "Entanglement must be 'excessive' before it runs afoul of the Establishment Clause." *Id.*

Plaintiff fails to allege how any government entity was benefited by Defendant Vargason's statement, Defendant McClarin's alleged threat, or Defendant Vargason's picture taking. Moreover, Plaintiff fails to allege any interference in the internal organization of a religious institution. Finally, these three allegations cannot be considered "excessive."

The court finds that Plaintiff's Establishment Clause claim must be dismissed.

### C. *Free Exercise Clause*

To state a claim for relief under the Free Exercise Clause, Plaintiff must allege facts demonstrating the challenged action created a burden on the exercise of her religion. *United States v. Lee*, 455 U.S. 252, 256–57 A plaintiff states a claim her exercise of religion is burdened

if the challenged action is coercive or compulsory in nature. *See Lyng v. Northwest Indian Cemetery Protective Ass'n.*, 485 U.S. 439, 448–51 (1988).

Plaintiff's Amended Complaint is devoid of any factual allegation that she was burdened in her ability to freely exercise her religious beliefs. She does not allege that any defendant prevented her from worshiping or otherwise freely practicing her religion, nor does she allege that any defendant required her to affirm a belief that is contrary to her faith. Though Plaintiff claims that Defendant Vargason's statement, "Praise the lord" was an order, she fails to allege any facts to support that assertion.

Plaintiff's Amended Complaint fails to state a Free Exercise claim.

### D.  Fourth Amendment

Plaintiff asserts that Fire Marshal McClarin's statement, "If you do not let us in, nobody will be allowed in," seized the building in violation of the Fourth Amendment and "made [her] and four other church members/volunteers/ vacate their place of worship."[2]  (Am. Compl., ¶¶ 19, 24.)  Plaintiff also complains of the "unconstitutional documenting of Plaintiff['s and others'] vehicles and license plates."  (*Id.*, ¶ 51.)

"A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."  *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  The Fourth Amendment protects "people, not places."  *Katz v. United States*, 389 U.S. 347, 351 (1967).  However, "any determination of just what protection is to be given requires, in

---

[2] The court already determined *supra* that Plaintiff does not have standing to vindicate the rights of others in her own name.  *Warth*, 422 U.S. at 499.

a given case, some reference to a place." *United States v. Ruckman*, 806 F.2d 1471, 1473 (10th Cir. 1986).

Plaintiff's factual allegations belie her claim that she was required to vacate the property. Plaintiff fails to allege that any defendant prevented her from entering the building or forced her from it. To the contrary, Plaintiff alleges that she entered the building and locked the door while the defendants were on scene, after Defendant McClarin allegedly made the statement. (Am. Compl., ¶¶ 18, 19, 28.) Plaintiff further alleges that the defendants left the premises after just 45 minutes, without ever having stepped foot in the building and without ever ensuring that it was vacant. (*Id.*, ¶¶ 18, 36.)

Moreover, "law enforcement officers may seize evidence in plain view, provided that they have not violated the Fourth Amendment in arriving at the spot from which the observation of the evidence is made." *Kentucky v. King*, 563 U.S. 452, 463 (2011) (citing *Horton v. California*, 496 U.S. 128, 136–140 (1990). Plaintiff does not allege that the defendants violated the Fourth Amendment by their arrival at the property. Nor does Plaintiff allege any "meaningful interference" with her vehicle by photographing it. *Jacobsen*, 466 U.S. at 113.

Finally, Plaintiff also asserts a claim for "Attempted Warrantless Search," based upon Officer Vargason's attempt to open the locked building door without a warrant. (Am. Compl., ¶ 28.) It is well settled that "no claim premised on an 'attempted' Fourth Amendment violation can result when no search occurs." *Doe v. McAfee*, 13–CV–01287–MSK–MJW, 2014 WL 4852274, at *4 (D. Colo. Sept. 29, 2014) (dismissing claim for "attempted unreasonable search of her person" as not cognizable). In this case, Plaintiff does not allege that the defendants ever entered or searched the building.

Plaintiff's Fourth Amendment claims fail and are dismissed.

### E. *Qualified Immunity*

Qualified immunity is an affirmative defense against 42 U.S.C. § 1983 damage claims available to public officials sued in their individual capacities. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The doctrine protects officials from civil liability for conduct that does not violate clearly established rights of which a reasonable person would have known. *Id.* As government officials at the time the alleged wrongful acts occurred, being sued in their individual capacities, the defendants are entitled to invoke a qualified immunity defense to Plaintiff's claims. *See id.* at 231; *Johnson v. Jones*, 515 U.S. 304, 307 (1995) (noting that police officers were "government officials entitled to assert a qualified immunity defense"). "In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (quoting *Pearson*, 555 U.S. at 232) (internal quotations omitted). Once a defendant invokes qualified immunity, the burden to prove both parts of this test rests with the plaintiff, and the court must grant the defendant qualified immunity if the plaintiff fails to satisfy either part. *Dodd v. Richardson*, 614 F.3d 1185, 1191 (10th Cir. 2010). Where no constitutional right has been violated "no further inquiry is necessary and the defendant is entitled to qualified immunity." *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1244 (10th Cir. 2008) (quotations omitted).

As the court has determined Plaintiff has failed to state any claim, the defendants are entitled to qualified immunity.[3]

### F. Motion to Amend

Plaintiff seeks to amend her complaint to "(1) add additional evidence to bolster the fact that Defendants malicious intent in their violation of Candace Aguileras (sic) Ancient Absolute Nature Rights, Reserved Rights and Reserved Powers. (2) to clarify existing claims in the complaint." (Mot. Amend at 1–2.)

The Local Rules of this District require parties to meet and confer prior to filing any motion, except those motions filed in a case of an unrepresented prisoner, motions to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure, motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and motions to withdraw by counsel pursuant to D.C.COLO.LAttyR 5(b). D.C.COLO.LCivR 7.1(a).

Local Rule 7.1(a) specifically directs the moving party to "confer or make reasonable good faith efforts to confer with any opposing counsel or unrepresented party to resolve any disputed matter." *Id.* A violation of Local Rule 7.1(a) is an independent basis for denial of a motion. *See Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, No. 09–cv–00970–PAB–KMT, 2014 WL 4056578, at *2 (D. Colo. Aug. 14, 2014).

In her motion to amend the complaint, Plaintiff provides a certification of conferral in which she avers she conferred with opposing counsel before filing her motion, in accordance

---

[3] The court need not address the other arguments made by the defendants in their motions, including arguments that any of the individual defendants did not participate in the alleged constitutional violations. Moreover, the court does not construe any of Plaintiff's claims as state tort claims, and Plaintiff confirms in her response to Defendant Mitchell's Motion to Dismiss that she does not assert any state tort claims. (*See* Resp. Mitchell Mot. at 2.)

with this Court's Local Rule of Practice 7.1(a).  *See* D.C.COLO.LCivR 7.1(a).  However, Plaintiff's attempt at conferral was to send defense counsel an email stating, "I am conferring with you to see you are opposed to a motion of leave to file a 2nd Amended complaint. Please answer via email."  (Resp. Mot. Amend, Ex. A.)  Defense counsel Hodges responded, requesting a redlined proposed complaint.  (*See id.*)  On October 16, 2018, at 9:10 p.m., Plaintiff emailed proposed amendments to Mr. Hodges without copying other counsel.  (*Id.*, Ex. B.)  Also, on October 16, 2018, at 9:42 p.m., the parties were notified by the electronic filing system that Plaintiff had filed her Motion for Leave to File a Second Amended Complaint.

To satisfy the requirements of Local Rule 7.1(a), "the parties must hold a conference, possibly through the exchange of correspondence but preferably through person-to-person telephone calls or face-to-face meetings, and must compare views and attempt to reach an agreement."  *Hoelzel v. First Select Corp.*, 214 F.R.D. 634, 636 (D. Colo. 2003).  The rule is not satisfied by one party sending an email merely indicating an intention to file a motion without suggesting any negotiation or compromise.  *Id.*  Noncompliance with procedures required by a local rule is a proper basis for denying Plaintiff's motion.  *See Shrader v. Biddinger*, 633 F.3d 1235, 1249 (10th Cir. 2011) (denying a motion to amend a complaint for failure to comply with a local rule) (citations omitted); *Farris v. Broaddus*, Case No. 08–CV–00986–CMA–BNB, 2008 WL 5225885, at *1 (D. Colo. Dec. 12, 2008) (denying a motion, in part, based upon a party's failure to comply with Local Rule 7.1(a)).

### G.  City Defendants' Motion for Attorney Fees

Finally, the State Defendants request an award of their attorney's fees pursuant to 42 U.S.C. § 1988.  (City Mot. at 14–15.)  The court has discretion to grant "the prevailing party . . .

a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  "A prevailing defendant may recover an attorney's fee only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant."  *Hensley v. Eckerhart*, 461 U.S. 424, 429 n.2 (1983); *see Edgerly v. City and Cnty. of San Francisco*, 599 F.3d 946, 962 (9th Cir.2010).  However, the City Defendants have not provided support for any particular fee requested.  *See* D.C.COLO.LCivR 54.3 (requiring that, "[u]nless otherwise ordered by the court, a motion for attorney fees shall be supported by affidavit," and "shall include the following for each person for whom fees are claimed: (1) a summary of relevant qualifications and experience; and (2) a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed.").  Accordingly, the City Defendants' request for attorney's fees is denied.

**WHEREFORE**, it is

**ORDERED** that "Defendant Mitchell's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 17) Pursuant to Fed. R. Civ. P. 12(b)(1) and (6)" and "City Defendants' Motion to Dismiss Amended Complaint." (Doc. No. 23) are **GRANTED** as follows:

1. To the extent Plaintiff asserts claims on behalf of others, including GreenFaithMinistry and its members, the claims are dismissed without prejudice for lack of standing;

2. Plaintiff's remaining claims are dismissed with prejudice for failure to state a claim upon which relief can be granted; and

3. The defendants are granted qualified immunity as to the claims asserted against them in their individual capacities.  It is further

**ORDERED** that the City Defendants' request for attorney's fees is **DENIED**. It is further

**ORDERED** that Plaintiff's "Motion for Leave to File a Second Amended Complaint (Doc. No. 26) is **DENIED**. It is further

**ORDERED** that any other pending motions are **DENIED** as moot. It is further

**ORDERED** that judgment shall enter in favor of the defendants and against the plaintiff on all claims for relief and causes of action asserted in this case. It is further

**ORDERED** that the defendants are awarded their costs to be taxed by the Clerk of Court in the time and manner prescribed by Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1. It is further

**ORDERED** that this case is **CLOSED**.

Dated this 23rd day of July, 2019.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge